689 P.2d 170

**STATE of Arizona, Appellee-Respondent,**

v.

**Billy Don LEE, Appellant-Petitioner.**

**Nos. 1 CA–CR 5510, 1 CA–CR 6894–PR.**

Court of Appeals of Arizona,
Division 1, Department D.

Oct. 6, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div., Diane M. Ramsey, Asst. Atty. Gen., Thomas E. Collins, Maricopa County Atty. by Hugo Zettler, Deputy County Atty., Phoenix, for appellee-respondent.

J. Douglas McVay, Phoenix, for appellant-petitioner.

## OPINION

HAIRE, Presiding Judge.

Appellant Billy Don Lee was tried to a jury and found guilty of aggravated robbery, a class 3 felony, in violation of A.R.S. § 13–1903(A). He admitted the allegations of two prior felony convictions and was

sentenced to the maximum term of 20 years imprisonment. He then appealed from the judgment and sentence and also sought post-conviction relief pursuant to Rule 32, Rules of Criminal Procedure, 17 A.R.S. When his petition for post-conviction relief was denied, he sought review in this court and the cases have been consolidated for decision.[1] The sole issue presented is whether appellant was denied effective assistance of counsel when his trial counsel: (1) at appellant's insistence, permitted two defense witnesses to testify even though counsel believed they would give perjured testimony; and (2) did not present a closing argument because he believed he was ethically precluded from doing so after the testimony was presented. We find that trial counsel's failure to present a closing argument deprived appellant of his sixth amendment right to effective assistance of counsel, resulting in a denial of due process and a fair trial. See *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982). We therefore reverse and remand for a new trial.

In June 1980, at approximately 10:00 p.m., appellant and two accomplices, Anthony Scott and Willie Hubbard, drove to a pizza parlor in Mesa, Arizona. Appellant Lee entered a back door open to the public, but went directly to an office restricted to employees. The eventual victim of the robbery (a cook) and a waitress were the only two employees working in the pizza parlor that evening. The cook entered the office and found appellant rifling through papers on a desk. When asked what he was doing, appellant responded that he was looking for an application. The cook told him that he should not be in the office and that he would have to come back the next morning to obtain an application. Appellant left through the back door, but re-entered a few moments later with his two accomplices, Scott and Hubbard.

Scott then grabbed the cook around the neck while Hubbard stated that it was a robbery and he had a gun. Hubbard took the cook to the cash register where the cook gave him the day's receipts. In the interim, appellant had entered the kitchen area where he was seen by the waitress. The three intruders then left together through the back door. As the cook was calling the police, he saw appellant drive away from the pizza parlor with Scott and Hubbard as passengers. He gave a description of the automobile to the police who stopped the car approximately six miles from the scene of the robbery. The money was recovered from behind the rear seat of the automobile and a wallet belonging to the waitress was found on the floorboard on the driver's side.

Before appellant was tried, his co-defendants Scott and Hubbard entered guilty pleas and were sentenced. They offered to testify at trial in support of appellant's defense that he was unaware of the robbery and was not an accomplice. Scott testified that when they entered the pizza parlor, although he grabbed the cook around the neck, he did not know a robbery was going to occur until Hubbard stated that it was a robbery. Scott also indicated that during the entire incident, appellant Lee was in the restroom and was unaware of the robbery. He further testified that he took the waitress's purse from the kitchen area and later threw it on the floorboard of the car on the driver's side when stopped by the police. This testimony was impeached by a prior statement made at his plea proceedings indicating that when he went into the pizza parlor, it was his intention to assist in the robbery. Hubbard also testified that appellant Lee was not aware of the robbery and that in fact Lee was in the car when the robbery took place. This testimony was impeached by the introduction of a prior written statement given to his probation officer which stated: "I along with two others went to the Pizza Inn in Mesa and took a little over $200."

At the conclusion of Scott's and Hubbard's testimony, the court recessed, and appellant's trial counsel made a record in

---

1. Appellate counsel, who also represented appellant in the post-conviction relief proceedings, is not the same attorney who represented appellant at trial.

chambers before the trial judge and the court reporter. Neither appellant nor the prosecutor were present. Appellant's trial counsel stated that on three separate occasions he had advised appellant not to call these witnesses because he felt it would substantially weaken appellant's case. Trial counsel believed it was a tactical error to call the witnesses because appellant had a better argument based on the state's evidence. He also believed, based on his own investigation, that the witnesses would commit perjury. Nevertheless trial counsel called the witnesses because of appellant's insistence and his belief that appellant's sixth amendment right to present witnesses in his own behalf compelled him to do so. Not wanting to be a party to perjury, trial counsel called the witnesses, merely asked foundational questions, and then let the witnesses give narrative testimony. At this in chambers session, trial counsel also indicated his reluctance to make a closing argument because of these circumstances. After all evidence had been presented, trial counsel waived closing argument.

Based upon counsel's actions and the record presented to the trial judge, appellant urges that he was denied effective assistance of counsel. First, he argues that trial counsel was under the mistaken belief that the sixth amendment required him to call these witnesses at the insistence of his client even though he believed their testimony to be harmful to his case and perjurious. Consequently, appellant contends, his case was substantially weakened because trial counsel presented evidence which he thought would damage appellant's case and which he should have known there was no obligation to present. Second, appellant argues that trial counsel's waiver of closing argument deprived him of effective assistance of counsel. Third, he claims that the in chambers disclosure to the trial court was prejudicial to him at the time of sentencing.

In response, the state does not rebut appellant's contention that trial counsel was not required to call these witnesses, but rather argues that trial counsel made a legitimate tactical decision to call the witnesses after weighing his own hesitance against the desires of his client. With the focus on tactics, the state maintains that appellant's claims are no more than a suggestion that present counsel would have tried the case differently and that in light of the strength of the state's case, appellant has not shown that he did not receive effective assistance of counsel.[2]

We disagree with the state's position that trial counsel's decision to call the witnesses was one of mere trial tactics. At the in chambers session, trial counsel discussed his decision to call the witnesses as follows:

"Both of the two witnesses who just testified are obviously co-defendants in this case. My client, Mr. Lee, insisted that I put both of them on the stand. I interviewed both of them prior to putting them on the stand. And they both told me essentially what they testified to from the stand.

"Based on all of the investigation that I have done in this case, there is no question in my mind that both of the witnesses just gave perjured testimony. But I do not know that by virtue of my client telling it's so. I do not know it by virtue of them telling me it's so. It is my own speculation that their testimony is perjured.

"I have on three, separate occasions had detailed discussions with my client in which I attempted to talk him out of putting these two witnesses on the stand, both—on each of these three occasions both because I felt that the testimony

2. The state presents its argument under Arizona's former "farce, sham, or mockery of justice" test for counsel's effectiveness. *See State v. Williams*, 122 Ariz. 146, 593 P.2d 896 (1979). After the briefs were submitted in this case, the Arizona Supreme Court announced the "minimal competence" standard for legal representation in criminal cases in *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982). Because this case was pending on appeal at the time that *Watson* was issued, we have applied the *Watson* standard in the instant case. *See State v. Nunez*, 135 Ariz. 257, 660 P.2d 858 (1983).

was perjured although nobody admitted it or told me so, and secondly because I felt that the defendant had a better argument based on the government's evidence.

\* \* \* \* \* \*

"My client insisted despite my protestations on these three occasions that I put these two witnesses on the stand. And I have spent a good deal of time wrestling in my mind with my ethical obligations under the circumstances.

"I have—in addition to wrestling with it in my mind, I have reviewed fairly extensively the A.B.A. standards on the defense function which describes in general and with some specifics the obligation of a defense lawyer on various and sundry circumstances.

"It was—it was my conclusion after all this mental wrestling that my belief that the testimony was perjured was not dispositive and that it was not my place to make that decision in my own head and therefore deprive the defendant of his constitutional right to present testimony in his own behalf. So I resolved it in favor of putting the witnesses on the stand but having minimum participation in the dialogue in the courtroom, simply asking the witnesses after the foundational questions, tell the jury what happened or whatever my words were."

These statements indicate that trial counsel's decision to call the witnesses was not deliberate trial strategy. He called the witnesses because he believed appellant's constitutional right to present testimony in his own behalf mandated such a decision. Indeed, the decision was contrary to his recommendations to appellant.

■ Although the precise issue has not previously been addressed in Arizona, we find that a defense attorney is not required to call witnesses on behalf of a defendant when he is certain that the witnesses will give perjured testimony even though his client insists upon calling the witnesses.

See *People v. Schultheis,* 638 P.2d 8 (Colo. 1981); *see also* ABA Standards for Criminal Justice 4–5.2 (2d ed. 1980) (decision on what witnesses to call is within exclusive province of lawyer after consultation with the client). In fact, Arizona's Code of Professional Responsibility DR 7–102(A)(4), Rule 29(a), Rules of the Supreme Court, 17A A.R.S., specifically precludes an attorney from knowingly using perjured testimony or false evidence in his representation of a client. Here, when faced with the dilemma, appellant's trial counsel mistakenly believed that appellant had the constitutional right to insist that witnesses be called in his behalf even though they would give perjured testimony. He analogized his situation to that of a lawyer representing a perjurious client. *See Lowery v. Cardwell,* 575 F.2d 727 (9th Cir.1978); *see also* ABA Standards for Criminal Justice 4–7.7 (2d ed. 1980) (delineating appropriate response by defense counsel when defendant testifies perjuriously).

Nevertheless, we hesitate to grant relief to appellant where he participated in counsel's error by so vigorously insisting on calling the perjurious witnesses. We do not doubt that had trial counsel refused to call the witnesses, appellant would now be arguing that counsel's refusal denied him the effective assistance of counsel.

Trial counsel's waiver of closing argument presents a more serious question, however.[3] The cook testified on cross-examination that he could not see appellant and did not know where appellant was when Scott grabbed him by the neck and when Hubbard pushed him to the cash register and took the money. The cook further testified that he then saw Hubbard run down the hall and saw all three intruders exit from the rear door. The waitress testified that she observed the appellant leaving the kitchen area when the cook and Hubbard were at the cash register. This testimony given by the cook and the waitress suggests that a viable defense was to

---

**3.** We note that trial counsel doubted whether he had advised appellant that if the witnesses were called, counsel would be unable to give closing argument. Thus, any argument of waiver is negated by appellant's lack of full warning as to the consequences of calling the witnesses.

attack the state's position that appellant participated as an accomplice to the robbery. Indeed, trial counsel had requested a "mere presence" jury instruction which the trial court gave.[4]

At the post-trial evidentiary hearing held on appellant's petition for post-conviction relief, trial counsel testified about his waiver of closing argument as follows:

"I did not feel that it was hardly worth arguing, even without these other two witnesses, considering the fact that it would be almost impossible to convince a jury that a stranger would go into a pizza parlor and go back into the kitchen and be there for some legitimate purpose. I felt it was a very weak argument. With these two witnesses I felt it was no argument.

\* \* \* \* \* \*

"Q. So is it a fair statement to make that other than the fact that you didn't want to put yourself in the position of having to either account for or ignore the testimony of these two witnesses who you suspected were perjurers—other than that fact, you would have given an argument; isn't that a fair statement?

"A. Well, I am not sure that my answer is responsive to your question. But I felt like I had some ethical problems standing up in front of the jury and arguing something that I felt was perjured. In fact, I was convinced and positive that it was perjured, and I would bet on it having been perjured. And I didn't see any way I could stand up in front of the jury and ignore that obviously perjured testimony. And I think I have some responsibility other than just get my guy off at any costs."

While trial counsel properly concluded that he could not make an argument based upon what he believed to be perjured testimony, the record reveals that it would have been possible to argue a "mere presence" theory of defense based upon other un-

tainted testimony, particularly that of the cook and the waitress.

The Supreme Court recognized the importance of closing argument for the defense in *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). The Court stated:

"It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment."

422 U.S. at 862, 95 S.Ct. at 2555, 45 L.Ed.2d at 600 (citation omitted).

■ The decision to waive closing argument is generally a matter of trial strategy. *See, e.g., United States ex rel. Turner v. Cuyler*, 443 F.Supp. 263, 268 (E.D.Pa. 1977), aff'd, 595 F.2d 1215 (3rd Cir.1979); *People v. Goodwin*, 24 Ill.App.3d 1090, 1095, 322 N.E.2d 569, 573 (1975); *Harriday v. State*, 238 Md. 75, 78, 207 A.2d 629, 630 (1965); *Commonwealth v. Turner*, 469 Pa. 319, 325, 365 A.2d 847, 850 (1976). However, such a decision should be a conscious

---

4. The trial court instructed the jury as follows:
   "The mere presence of a defendant at a place where a crime is being committed is not evidence of his guilt. If you believe that the defendant in this case was present at the time of the robbery alleged in this case, you may not convict him based upon that mere presence alone."

choice in light of the circumstances and experience of trial counsel. *United States ex rel. Turner v. Cuyler, supra.* For example, counsel may waive closing argument at a bench trial of short duration with simple facts where there appears to be no basis to conclude that the trial judge would have been swayed by a summation or recapitulation of the facts. *See Commonwealth v. Turner, supra; cf. State v. Martinez,* 19 Ariz.App. 417, 508 P.2d 82, *cert. denied,* 414 U.S. 1027, 94 S.Ct. 456, 38 L.Ed.2d 320 (1973) (silence of defense counsel at probation revocation hearing was not inadequate representation and may have been a wise trial tactic).

▮ Differences regarding trial strategy will not support a claim of ineffective assistance of counsel so long as the challenged conduct could have had some reasoned basis. *State v. Watson, supra,* 134 Ariz. at 4, 653 P.2d at 354. We do not believe that in this case trial counsel's decision to waive closing argument was a reasoned election of a particular trial tactic. Rather, he testified that he waived argument because the two perjurious witnesses had testified.

We have previously stated that trial counsel should not have called these witnesses. We cannot say that the waiver of closing argument, based on this erroneous action, was harmless beyond a reasonable doubt particularly when the "mere presence" defense was available. Under these circumstances, we conclude that appellant was deprived of his right to the effective assistance of counsel required by *State v. Watson, supra.*

The judgment of conviction is reversed and the matter is remanded for a new trial. Because we have reversed the judgment of conviction, we need not consider whether trial counsel's in chambers disclosure to the trial court that appellant had insisted upon the presentation of perjured testimony improperly influenced the trial court in sentencing.

EUBANK and MEYERSON, JJ., concur.