689 P.2d 153

**STATE of Arizona, Appellee-Respondent,**

v.

**Billy Don LEE, Appellant-Petitioner.**

**No. 6107–PR.**

Supreme Court of Arizona,
In Banc.

Sept. 25, 1984.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Diane M. Ramsey and Linda A. Akers, Asst. Attys. Gen., Thomas E. Collins, Maricopa County Atty., Hugo Zettler, Deputy County Atty., Phoenix, for appellee-respondent.

J. Douglas McVay, Phoenix, for appellant-petitioner.

GORDON, Vice Chief Justice:

For his participation in the robbery of a Village Inn Pizza restaurant in Mesa, Arizona, appellant-respondent Billy Don Lee was convicted on May 11, 1981 of aggravated robbery in violation of A.R.S. § 13–1903(A) and sentenced to twenty years imprisonment. The primary question on appeal is whether trial counsel's acquiescence in appellant's demand that he call witnesses whose veracity and credibility counsel strongly doubted and the concomitant waiver of closing argument constitute ineffective assistance of counsel. A review of the facts and history of this case are provided in *State v. Lee*, 142 Ariz. 227, 689 P.2d 170 (App.1983). Only those facts necessary for disposition of the questions before us will be repeated here.

In pre-trial discussions between appellant and trial counsel,[1] appellant insisted that counsel call Anthony Scott and Willie Hubbard. Both men had previously entered plea agreements with the state regarding the robbery; both had been sentenced. Based on his personal investigation of the case and interviews with Scott and Hubbard, counsel believed they would, if called to testify, present perjurious testimony. He also believed appellant's case would be stronger without their testimonies. Counsel tried to convince appellant that it would be better not to call them. Appellant was adamant and counsel acceded to appellant's demand. Upon calling Scott, counsel asked basic introductory questions to establish Scott's identity and to establish that he had

---

1. Unless otherwise indicated, "counsel" refers to trial counsel and not appellate counsel.

personal knowledge of the robbery at issue. He then asked, "Will you tell the jury exactly what happened that night [of the robbery], please?" Scott provided a narrative account of the events he considered relevant; he was rigorously cross-examined and excused. The questioning of Hubbard followed the same course.

At that point, the court recessed and counsel made a record in chambers before the trial judge and court reporter. Counsel said he believed the two witnesses had perjured themselves. He explained that he had called them, notwithstanding his pretrial belief that they would perjure themselves, because his client had insisted that he do so. Counsel stated:

> "It was my conclusion after all this mental wrestling [on my ethical obligation under the circumstances,] that my belief that the testimony was perjured was not dispositive and that it was not my place to make that decision in my own head and therefore deprive the defendant of his constitutional right to present testimony in his own behalf."

He also informed the court that he might waive closing argument because he did not know if he could "get up in front of the jury and make an argument based on what I am positive in my own mind is perjured testimony."

At the appropriate time, counsel waived closing argument. Appellant was found guilty and, after admitting two prior felonies, sentenced to the maximum term of twenty years. Counsel's motion to withdraw was granted, new counsel was appointed, and appellant sought post-conviction relief under Ariz.R.Crim.P. 32. That relief was denied. Appellant timely filed notice of appeal from both judgments. The matters were consolidated for decision.

Appellant claimed he received ineffective assistance of counsel because trial counsel had called witnesses trial counsel believed would be harmful to appellant's case, because trial counsel had waived closing argument, and because trial counsel's in chambers remarks prejudiced the trial court against him such that he received a more severe sentence than he would otherwise have received. The Court of Appeals found trial counsel's decision to call the two witnesses improper, but declined to consider relief on that ground. It did, however, grant relief on the ground that counsel's decision to waive closing argument constituted ineffective assistance. The conviction was reversed and the matter remanded for a new trial.

The state petitioned for review. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.Crim.P. 31.19.

## I

In May of this year, the United States Supreme Court set forth the standard to be applied in cases in federal court involving allegations of ineffective assistance of counsel based on "'actual ineffectiveness' of counsel's assistance in a case going to trial." *Strickland v. Washington,* —— U.S. ——, ——, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674, 691 (1984). The Court said:

> "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Id.* at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

In *State v. Watson,* 134 Ariz. 1, 653 P.2d 351 (1982), this Court rejected the "farce, sham or mockery of justice" standard for counsel's ineffectiveness and adopted the "minimal competence" standard. We said:

> "Failure by an attorney to pursue [matters generally agreed upon as consti-

tuting proper defense practice in criminal cases] would be considered representation which falls below the minimum standards of professional competence required of defense counsel."

*Id.* at 5, 653 P.2d at 355. This inquiry comports with the first component of the *Strickland* test and remains the law of this state. We then recognized, as did the Supreme Court in *Strickland,* that "not all errors by counsel are harmful to the defendant, and reversal is not required for harmless error," *id.* We held that

> "[o]nce the defendant [shows counsel's ineffectiveness] by a preponderance of the evidence, the state bears the burden of showing that the failure, if any, was harmless to the defendant beyond a reasonable doubt under the circumstances of the case."

*Id.* It is this second requirement, which shifts the burden of proof to the state to show that the error was not so prejudicial as to require reversal, that is at odds with *Strickland.* Though not constitutionally compelled to do so, we have reconsidered the test set forth in *Watson,* because an appellant is in a better position than the state to know what transpired between trial counsel and appellant and because appellate counsel is in a better position than the state to determine how errors of trial counsel prejudiced his or her client, we believe the standard set forth in *Strickland* is the better one. We hold today that a criminal defendant is entitled to have his or her conviction reversed if he or she shows, first, that under the circumstances and in light of prevailing professional norms counsel showed less than minimal competence in representing the criminal defendant and, second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* — U.S. at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A "reasonable probability"

is less than "more likely than not" but more than a mere possibility. To the extent that *Watson* is inconsistent with this opinion, it is overruled.

## II

Turning to the instant case we ask first whether, under the circumstances, trial counsel showed at least minimal competence in representing appellant. We find that in acceding to appellant's demand that he call Scott and Hubbard and in failing to present a closing argument, trial counsel provided less than minimally competent representation.

## A

■ There is no support in law for counsel's belief that defendant's sixth amendment right to present a defense included the right to determine what witnesses to call at trial. In acceding to his client's demand that he call two witnesses notwithstanding his professional judgment that it would be both unethical and detrimental to his client's case to do so, defense counsel did what a minimally competent defense counsel would not have done.

■ It is important to note that this is not a case in which we are asked to determine if counsel was ineffective because he made a tactical decision not to call a proffered witness. *See Vess v. Peyton,* 352 F.2d 325 (4th Cir.1965), *cert. denied,* 383 U.S. 953, 86 S.Ct. 1215, 16 L.Ed.2d 214 (1966); *State v. Workman,* 123 Ariz. 501, 600 P.2d 1133 (App.1979). Disagreements in trial tactics will not support a claim of ineffectiveness provided the conduct has some reasoned basis. *Watson, supra.* Nor is this a case in which we are asked to evaluate trial counsel's decision to call a criminal defendant when he or she knows the client, if permitted to testify, will commit perjury.[2] The instant case is unique in

**2.** Counsel's responsibility when faced with a client who insists on presenting testimony that counsel knows or believes is perjurious is the subject of a caustic debate. *See, e.g.,* M. Freedman, *Lawyers' Ethics in an Adversary System*

(1975); Bress, "Professional Ethics in Criminal Trials: A View of Defense Counsel's Responsibility," 64 Mich.L.Rev. 1493 (1966); Burger, "Standards of Conduct for Prosecution and Defense Counsel: A Judge's Viewpoint," 5 Am.

that it presents a challenge to an attorney's acquiescence in his client's demand that he call two witnesses notwithstanding the attorney's professional judgment that it would be unethical and detrimental to his or her client to do so. Though the question is one of first impression, we find that the answer is clear.

█ In keeping with the rights vested in an accused under the Constitution, certain basic decisions have come to belong to an accused. The ultimate decisions on whether to plead guilty, whether to waive jury trial, and whether to testify are to be made by the client. Counsel is encouraged to provide guidance and to urge the client to follow professional advice, but the final decision as to these three crucial questions rests with the client. A.B.A. Standards for Criminal Justice § 4–5.2 commentary at 4.67 (2d ed. 1980) ("A.B.A. Standards").

█ On the other hand, the power to decide questions of trial strategy and tactics rests with counsel, *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *State v. Rodriguez,* 126 Ariz. 28, 612 P.2d 484 (1980), and the decision as to what witnesses to call is a tactical, strategic decision. *Vess v. Peyton, supra;* A.B.A. Standards § 4–5.2 commentary at 4.67. Tactical decisions require the skill, training, and experience of the advocate. A criminal defendant, generally inexperienced in the workings of the adversarial process, may be unaware of the redeeming or devastating effect a proffered witness can have on his or her case.

In the instant case, appellant demanded that counsel call Scott and Hubbard. Counsel was convinced, based on his understanding of the events surrounding the robbery and his interviews with Scott and Hubbard, that they would present inconsistent, perjurious testimony that would, in addition to constituting a fraud on the court, be harmful to his client's defense. Counsel's notion that appellant's right to present a defense on his own behalf included the right to call witnesses of his own choice is not supported by most legal authorities.

█ In explaining his reasons for calling Scott and Hubbard, counsel stated that he had "wrestled" with his ethical duty not to suborn perjury and his client's "right" to present a defense on his own behalf and had concluded that his client was entitled to have witnesses of his choice testify. We recognize that counsel did perceive the ethical dilemma and recognize, also, that no previous Arizona authority existed to offer counsel guidance. However, the A.B.A. Model Code of Professional Responsibility and the A.B.A. Standards of Criminal Justice have been promulgated to provide assistance to attorneys confronted with ethical questions. These authorities indicate clearly that the decision of what witnesses to call was counsel's to make and that appellant had no right to have a witness, other than himself, present perjured testimony in his behalf. *See* Ariz.R.S.Ct. 29(a), DR 7–102(A)(4) ("In his representation of a client, a lawyer shall not knowingly use perjured testimony or false evidence."); A.B.A. Model Code of Professional Responsibility, Ethical Consideration 7–26 ("The law and Disciplinary Rules prohibit the use of * * * perjured testimony or evidence. A lawyer who knowingly participates in introduction of such testimony or evidence is subject to discipline. A lawyer should, however, present any admissible evidence his client desires to have presented unless he knows, or from facts within his knowledge should know, that such testimony or evidence is * * * perjured."); *see also* A.B.A. Standards § 4–5.2(b) and commentary. Counsel's intuitive choice of strategy

Crim.L.Q. 11 (1966); Comment, "The Perjury Dilemma in an Adversary System," 82 Dick.L. Rev. 545 (1978); Erickson, "The Perjurious Defendant: A Proposed Solution to the Defense Lawyer's Conflicting Ethical Obligations to the Court and to His Client," 59 Den.L.J. 75 (1981); Freedman, "Professional Responsibility of the

Criminal Defense Lawyer: The Three Hardest Questions," 64 Mich.L.Rev. 1469 (1966), Noonan, "The Purposes of Advocacy and the Limits of Confidentiality," 64 Mich.L.Rev. 1485 (1966); Wolfram, "Client Perjury," 50 So.Cal.L.Rev. 809 (1977).

is insufficient. Research of the caselaw in this area reveals that other courts have held that a defendant's constitutional right to the effective assistance of counsel does not include the right to require his lawyer to perpetrate a fraud on the court. *Herbert v. United States*, 340 A.2d 802 (D.C. 1975) (no ineffective assistance where trial counsel made a conscientious decision not to present alibi testimony which he was convinced would be perjurious); *see People v. Pike*, 58 Cal.2d 70, 372 P.2d 656, 22 Cal.Rptr. 664, *cert. denied*, 371 U.S. 941, 83 S.Ct. 324, 9 L.Ed.2d 277 (1962); *State v. Henderson*, 205 Kan. 231, 468 P.2d 136, 64 A.L.R.3d 375 (1970); *State v. Robinson*, 290 N.C. 56, 224 S.E.2d 174 (1976). The scholarly writing in this area also supports the concept that the criminal defense lawyer has a general duty not to use false testimony of persons other than the defendant. Bress, *supra*, at 1495 ("It is inconceivable that ethical counsel would call to the witness stand a person, other than his own client, who he knows will commit perjury."); *see* M. Freedman, *Lawyers' Ethics in an Adversary System* 32 (1975). In succumbing to his client's demand that he call Scott and Hubbard, counsel did not fulfill his duty to make tactical, strategic decisions and therefore fell below minimal standards. Counsel therefore failed to provide effective assistance.

The Court of Appeals, having correctly concluded that counsel erred in calling Scott and Hubbard, was "hesitant" to grant relief on that ground because appellant had "participated in counsel's error by so vigorously insisting on calling the perjurious witnesses." *Lee, supra*, 142 Ariz., at 230, 689 P.2d at 173. The question we need consider is whether appellant, in urging counsel to do what counsel did, waived his right to claim ineffective assistance of counsel based on that conduct.

■ The right to effective assistance of counsel is a fundamental right. A defendant may waive that right and represent himself pursuant to a judicial finding that he has knowingly, intelligently, and voluntarily elected to do so. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *cf. Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *State v. Noble*, 109 Ariz. 539, 514 P.2d 460 (1973). Having waived the right to counsel, a defendant cannot later claim that his or her trial was not fair because he or she did not have the benefit of counsel. The question in the instant case is whether a defendant, entitled to waive his or her right to full-scale representation by counsel, can waive the right to claim ineffective assistance with respect to a single decision which counsel is authorized to make.

On the one hand, we are reluctant to allow counsel to delegate the duty to make tactical, strategic decisions. Counsel is deemed to have the training, familiarity, and experience needed to decide what tactic or strategy will best serve a client; clients generally lack that training, familiarity, and experience and are, therefore, less competent to make those decisions. The United States Supreme Court, acknowledging that "when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas," said,

> "[t]his allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. * * * Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense."

*Faretta, supra* 422 U.S. at 820–821, 95 S.Ct. at 2534, 45 L.Ed.2d at 573–74 (emphasis in original). *Faretta* and the A.B.A. Standards indicate that a criminal defendant, having agreed to be represented by counsel, is bound by counsel's decisions on matters entrusted to counsel and that a criminal defendant cannot, therefore, successfully claim ineffective assistance of counsel with respect to them.[3] Because a

---

3. Claims of ineffective assistance of counsel predicated on a tactical "error" have been suc-

criminal defendant cannot claim ineffective assistance of counsel in such a situation, he or she certainly cannot waive the right to do so; one cannot waive a right one does not have.

On the other hand, *Faretta* indicates that a criminal defendant is entitled to a defense that is "his," and the A.B.A. Standards urge counsel to consult a client on tactical and strategic matters before making a final decision. Though counsel is clearly not the "alter-ego" or "mouthpiece" of the accused, A.B.A. Standards § 4–1.1 commentary at 4.9; *People v. Schultheis*, Colo., 638 P.2d 8 (1981), counsel does serve at the invitation of the accused and it is counsel's duty to represent the accused. Though counsel, in acceding to a client's demands, may violate his or her ethical responsibility to zealously represent a client, we share the Court of Appeals' hesitancy to permit a client to claim ineffective assistance when counsel did precisely what the client demanded counsel do.

In addition, the difficulties attendant to determining if a criminal defendant intelligently and voluntarily waived his or her right to challenge an admittedly unreasoned trial tactic may prove insurmountable. It would be extremely difficult to determine if a criminal defendant was given "enough" information, and made "sufficiently" aware of the consequences of a tactical decision, to permit him or her to knowingly and intelligently waive the right to challenge the use of an admittedly unwise tactic as ineffective assistance of counsel. Likewise, it would be extremely difficult to determine if, in fact, a voluntary waiver was actually made. When a defendant elects to waive counsel in toto, the trial judge questions the defendant directly to ensure that the waiver is knowingly, intelligently, and voluntarily made. How an appellate court would determine whether an alleged waiver of the right to make an ineffectiveness claim was know-

ingly, intelligently, and voluntarily made is unclear.

Without deciding if piecemeal waiver would be possible in some situations, we find no waiver here. Though the record reveals that counsel, on three occasions, urged the defendant to accept counsel's professional judgment that it would not be in defendant's best interest to call Hubbard and Scott to testify, the record also reveals that counsel doubted he had told defendant that, if Hubbard's and Scott's testimonies were what he expected they would be, he would forego closing argument. Further, there is nothing in the record that indicates that the defendant was told he would lose the right to claim ineffective assistance of counsel if counsel acquiesced in his demand.

■ Absent a clear showing that a criminal defendant was informed of the dangers and disadvantages attendant to a proposed course of action and absent a clear showing that he or she knowingly and voluntarily agreed to forego a claim of ineffectiveness if counsel followed that course of action, we will not consider the permissibility of a waiver of the right to ineffective assistance premised on an unreasoned trial tactic. Because these two threshold requirements are not met in the instant case, we need not consider if appellant could have effectively waived his right to claim ineffective assistance of counsel.

**B**

■ Though closing argument is often an invaluable tool as it "serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case," *Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593, 600 (1975), an attorney's decision to waive closing argument does not *per se* constitute ineffective assistance. Numerous courts have recognized that the decision to waive closing argument is generally a matter of trial

---

cessful only when the decisions revealed "ineptitude, inexperience, lack of preparation, or unfamiliarity with basic legal principles amounting to ineffective assistance of counsel." A.B.A.

Standards § 4–5.2 commentary at 4.67–4.68; *see Bell v. Georgia*, 554 F.2d 1360 (5th Cir.1977); *Pinnell v. Cauthron*, 540 F.2d 938 (8th Cir.1976).

strategy. *See, e.g., United States ex rel. Turner v. Cuyler,* 443 F.Supp. 263 (E.D. Pa.1977), *aff'd,* 595 F.2d 1215 (3rd Cir. 1979); *People v. Goodwin,* 24 Ill.App.3d 1090, 322 N.E.2d 569 (1975); *Harriday v. State,* 238 Md. 75, 207 A.2d 629 (1965); *Commonwealth v. Turner,* 469 Pa. 319, 365 A.2d 847 (1976). Indeed, this Court recently recognized that "in some cases the wisest trial tactic is to keep quiet * * *. We refuse to equate silence with incompetence." *State v. Bojorquez,* 138 Ariz. 495, 500, 675 P.2d 1314, 1319 (1984), quoting *State v. Martinez,* 19 Ariz.App. 417, 418, 508 P.2d 82, 83, *cert. denied,* 414 U.S. 1027, 94 S.Ct. 456, 38 L.Ed.2d 320 (1973). We will not inquire into the advisability of waiver of closing argument as a ground for ineffective assistance where waiver was a reasoned election of a trial strategy. *Watson, supra.* However, where trial counsel's decision to waive closing argument is unreasonable in that it is below the threshold of what minimally competent defense counsel would do under a given set of circumstances, counsel's conduct will not escape judicial scrutiny. In addition, trial decisions that appear to be based on counsel's beliefs respecting his or her duty to the court rather than his or her professional assessment of strategic options are also subject to judicial review. *See Johns v. Smyth,* 176 F.Supp. 949, 953 (E.D.Va.1959) ("The failure to argue the case before the jury, while ordinarily only a trial tactic not subject to review, manifestly enters the field of incompetency when the reason assigned is the attorney's conscience.").

In the instant case, it is unclear whether trial counsel's decision to waive closing argument was tactical or based on his conscience. In his in chambers statement to the trial court, counsel indicated that he might not present a closing argument. He stated:

"[The defendant] does not have a constitutional right to have me get up in front of the jury and make an argument based upon what I personally believe to be perjured testimony. * * *

"I am having a great deal of mental difficulty in my mind here before lunch as to whether I can argue this case, and I may well waive argument. * * *

"And I wanted this statement to be in the record so that an appellate court in judging what I anticipate to be an ineffective assistance of counsel claim in the future can weigh my reasons for doing what I anticipate I may do."

On the one hand, this indicates that trial counsel believed he was ethically precluded from making a closing argument. This is supported by an attachment to appellant's petition for post-conviction relief in which appellate counsel stated that he had

"been advised [by trial counsel] that trial counsel refused to argue the case to the jury because he believed that two witnesses which were called by him at the insistence of the defendant had not told the truth."

On the other hand, trial counsel's statement to the court indicates that he believed he could not make a credible closing argument without referring to the allegedly perjurious testimonies. This possibility is supported by his testimony at a post-conviction hearing. He stated that without the testimonies of Scott and Hubbard he could have argued that appellant had been merely present at the time of the robbery but that with them he had no argument to make.

We need not determine whether trial counsel's decision to waive closing argument was a tactical one or one dictated by conscience. In either case, the decision was unreasonable as it was below the threshold of what minimally competent defense counsel would have done under the circumstances. If trial counsel believed he was ethically precluded from making a closing argument because he had called two perjurious witnesses whose testimonies were in accord with the argument he planned to make, he was simply wrong. Counsel must not suborn perjury by urging a jury to believe perjurious testimony, Ariz. R.S.Ct. 29(a), DR 7–102(A)(4); however counsel does not violate any ethical norm by urging a defense as long as he or she

relies on the sound, non-perjurious evidence introduced at trial and does not rely on the perjurious testimony. Trial counsel was also unreasonably mistaken if he believed there was no credible argument he could make without referring to the controversial testimony.[4] In the instant case, trial counsel could have, and we believe a minimally competent defense counsel would have, argued a "mere presence" defense to the jury without referring to either Scott's or Hubbard's testimony. When called at trial, two Village Inn Pizza employee-witnesses identified appellant as one of three persons in the restaurant at about the time of the robbery. The cook testified that shortly before the robbery he had found appellant in the restaurant's back office, that he had told him to leave, and that after Scott and Hubbard had emptied the cash register he had seen all three men exit through the back door and drive off. The waitress testified that after she saw the cook, Scott, and Hubbard walking toward the cash register, she saw appellant emerge from the kitchen. Neither employee was able to state more than that he or she had seen appellant in the restaurant shortly before, during, or after the robbery. Minimally competent defense counsel would have argued that appellant was merely present in the restaurant and that the state had failed to meet its burden of proving beyond a reasonable doubt all the elements of A.R.S. § 13–1903(A). In waiving closing argument, trial counsel provided ineffective assistance.

### III

We now turn to the second inquiry in our ineffectiveness of counsel analysis: was appellant prejudiced by counsel's substandard conduct? The Court of Appeals, relying on *Watson, supra,* said:

> "We have previously stated that trial counsel should not have called these witnesses. *We cannot say that the waiver of closing argument, based on this erroneous action, was harmless beyond a reasonable doubt* particularly when the 'mere presence' defense was available. Under these circumstances, we conclude that appellant was deprived of his right to the effective assistance of counsel * * *."

*Lee, supra,* 142 Ariz., at 232, 689 P.2d at 175 (emphasis added). Because we reject the "harmless beyond a reasonable doubt" standard for determining whether counsel's substandard conduct constitutes ineffective assistance of counsel, the Court of Appeals decision is vacated. As of today, a conviction will be reversed based on ineffective assistance of counsel only when the defendant-appellant can show a reasonable probability that, but for trial counsel's unprofessional conduct, the result of the trial would have been different. Appellant Lee has not had an opportunity to make this showing. His request for post-conviction relief and his arguments to the Court of Appeals were made prior to *Watson, supra.* Under the pre-*Watson* higher standard, appellant was not required to make a showing of prejudice; rather, he had to establish that counsel's assistance rendered his trial a "farce, sham or mockery." Only if he made that showing was he entitled to relief.[5] We therefore remand to the trial court to give appellant the opportunity to

---

4. While a knowledgeable judge or juror, alert to the ethical problems faced by attorneys and the manner in which they traditionally are met, might infer that Scott's and Hubbard's testimonies were perjurious from trial counsel's failure to refer to them, trial counsel's failure to make a closing argument cannot be deemed tactical on that ground given the record before us. We will not impute this reasoning to counsel without some clear indication that such reasoning did affect his decision. It is neither our job, nor our desire, to find justifications to shield counsel from claims of ineffective assistance when the record provides no sound basis to do so.

5. In most cases presently before this Court in which ineffectiveness of counsel is urged as a ground for reversal, the appellant has had an opportunity to show prejudice. Though the burden of proof in *Watson* was on the state to show that any error of counsel was harmless beyond a reasonable doubt, appellants had the same incentive to present evidence of prejudice as they have under the standard announced today. Appellants who have had one opportunity to show prejudice and failed to do so are not entitled to a second chance.

demonstrate the requisite prejudice. As it appears that the testimony of the trial judge who presided over appellant's trial will be relevant to the determination of whether appellant was prejudiced, the case must be assigned to another judge. Ariz. R.Crim.P. 32.4(c). If the newly assigned trial judge finds that appellant has shown the requisite prejudice, he or she must so inform this Court and we will vacate the judgment and order a new trial. If he or she finds appellant has failed to do so, appellant's final claim of ineffective assistance of counsel becomes relevant.

Appellant claims trial counsel's in chambers disclosures to the trial court were improper and led the court to impose a harsher sentence than it would otherwise have imposed. Because we have never set forth guidelines to assist defense counsel in a case such as this, we take this opportunity to do so.

■■■■ Where defense counsel determines that it would be unethical or contrary to a client's best interest to call a particular witness urged by a client, counsel must refuse to do so. If the refusal to call the witness causes significant antagonism between counsel and client, counsel may request permission to withdraw. Such requests should only be made when the antagonism is so severe that continued representation of the client would be extremely difficult. In requesting permission to withdraw, counsel should not, however, inform the court of the specific basis for the request. Counsel should state only that an irreconcilable conflict has made continued representation extremely difficult. Because an "irreconcilable conflict" may mean a conflict of interest, of personality, or of trial strategy, as well as a conflict regarding the presentation of false evidence, counsel does not in any way compromise a client's position or stature before the court when his or her statement is limited in this way. *See Schultheis, supra.* Any post-trial claim that counsel, by failing to call a proffered witness, was ineffective will fail provided that decision was a reasoned one. *Id.*

■■■■ The decision as to whether counsel should be permitted to withdraw is within the sound discretion of the trial court. We agree with the Colorado Supreme Court that, in making the decision, a trial court

"must balance the need for the orderly administration of justice with the fact that an irreconcilable conflict exists between counsel and the accused. In doing so, the court must consider the timing of the motion, the inconvenience to witnesses, the period of time elapsed between the date of the alleged offense and trial, and the possibility that any new counsel will be confronted with the same irreconcilable conflict. The decision of the trial court to deny a motion to withdraw will not be disturbed absent a clear abuse of discretion."

*Id.* 638 P.2d at 15.

■■■■ The fact that subsequent counsel may be faced with the same "irreconcilable conflict" as initial counsel does not alter our belief that counsel should be able to seek withdrawal. Though subsequent counsel may be asked to participate in the same subornation of perjury as prior counsel, subsequent counsel may be more successful at persuading the client to follow a different course of action. In addition, subsequent counsel may feel more comfortable, or may have more experience, taking control of the litigation such that it would not be difficult for him or her to continue the representation notwithstanding differences with the client. If "irreconcilable conflicts" arise between a particular defendant and a string of attorneys, we trust the trial court will, when the orderly administration of justice requires, refuse permission to withdraw. In such a case, counsel must, within the confines of the law and his or her professional duties and responsibilities, present the client's case as well as he or she can. A criminal defendant is entitled to full and fair representation within the bounds of the law. If he or she is dissatisfied with the representation to which he or she is entitled in our system, self-representation is available. Counsel must not compromise the integrity of his or

her client, the court, or the legal profession by exposing a client's proclivities or by engaging in unethical conduct at a client's request.

In the instant case, we will not dwell on the question of whether trial counsel's in chambers conduct was reasonable at the time. As appellant's liberty is at stake, we believe he is entitled to an opportunity to show he was prejudiced by trial counsel's statements. If the trial court, on remand, finds that appellant has not met his burden of showing a reasonable probability that, but for counsel's errors, he would not have been found guilty of aggravated robbery, it must then determine if appellant has shown a reasonable probability that, but for the disclosures to the trial judge, he would have received a lighter sentence. If the trial court determines that appellant was prejudiced, we will affirm the judgment but order appellant re-sentenced; if it finds that appellant suffered no prejudice, we will affirm both the judgment and sentence.

The opinion of the Court of Appeals, Division One, 142 Ariz. 227, 689 P.2d 170 (App.1983) is vacated. Remanded to the trial court for further proceedings consistent with this opinion.

HOLOHAN, C.J., and HAYS and CAMERON, JJ., concur.

FELDMAN, Justice, concurring in part; dissenting in part.

I concur with the legal principles expressed in the opinion. Under the facts before us, however, I cannot agree with the result. In my view, counsel was not ineffective and the conviction should be affirmed.

Under *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982), counsel is not held to a comparative standard of performance. Rather than adopting a comparative test, we adopted a standard which requires counsel to demonstrate minimal competence. *Id.* at 4, 653 P.2d at 354. In the final analysis, of course, this means that it is this court which sets the standard, presumably giving some consideration to comparative criteria and other factors as yet unspecified. In the case at bench, I do not believe that trial counsel was faced with so clear a choice that we can say he fell below minimal standards of competency in calling the two witnesses and later foregoing final argument.

As the majority indicates (maj. op. at 158), trial counsel has the power to control strategy and tactics and to determine which witnesses will be called, what arguments will be made, what exhibits offered and the like. However, that power is not unfettered. In exercising his power to control strategy and tactics, the attorney nevertheless remains circumscribed by his *duty;* he always " 'acts on behalf of his client,' " and his actions must be designed to give the client both " 'the result which his client seeks' " and the rights which the law allows. *State v. Rodriguez*, 126 Ariz. 28, 34, 612 P.2d 484, 490 (1980), quoting *Lanier v. State*, 486 P.2d 981, 986 (Alaska 1971). Among the rights of the defendant is the Sixth Amendment right to call favorable witnesses, *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 18, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). While this right is not absolute, and does not extend to cumulative or irrelevant testimony (nor, certainly, to perjured testimony), it does extend to the testimony of competent witnesses who have personal knowledge of the events and whose testimony would be relevant, material and exculpatory. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 3449–50, 73 L.Ed.2d 1193 (1982).

Thus, we have a divergence between counsel's power to control tactics and strategy, the duty owed the system which requires that perjured testimony not be offered, and the defendant's rights to present a defense and to have the assistance of counsel in so doing. As the majority correctly holds (maj. op. at 157), defendant's Sixth Amendment right and counsel's duty to his client must give way if counsel knows or should know that the proposed

witnesses will perjure themselves. The tension lies in the word "know." It is at this point in the case at bench where the bright line of legal principle becomes clouded by actual fact. It is not clear that counsel *knew* that the two witnesses would perjure themselves. The transcript of the in-chamber proceedings on day of trial shows counsel's comments as follows:

> Based on all of the investigation that I have done in this case, there is no question in my mind that both of the witnesses just gave perjured testimony. But I do not know that by virtue of my client telling me it's so. I do not know it by virtue of them telling me it's so. *It is my own speculation* that their testimony is perjured.

Transcript of In-Chamber Proceedings at 4 (emphasis supplied).

In my view, trial counsel here was caught in a dilemma to which there was no clear, obvious answer. On the one hand, his client demanded his constitutional right to present witnesses to the essential facts; on the other hand, the lawyer believed that the testimony might be perjured. We may assume also that the lawyer was aware of his duty to assist his client, not as a judge of credibility, but as an advocate of the client's case. Further, we can and should take note that if the lawyer had not called the witnesses, there is little doubt but that the client would have claimed, with some degree of plausibility, that counsel had been ineffective because he had failed to present important exculpatory evidence. The decision as to the proper course of conduct in these situations must often be made—as it was here—in the midst of trial, with little time to consult law reviews in order to obtain scholarly views on an issue on which there is essentially no case law. We have no way of knowing, but I strongly suspect that most lawyers, having no actual knowledge of perjury, would have called the witnesses, questioned them, and argued their testimony even though they were concerned about the tactical or ethical problems. Certainly, if this lawyer had pursued such a course of conduct, only speculating that there might be perjury, his conduct would not have been questioned. This lawyer did try his best to discharge both of his duties—that owed to the system and that owed to his client. In my view, while the lawyer's decision to call the witnesses and allow them to give narrative testimony was not the best course of conduct it was not so unreasonable as to fall below minimal standards. He could not act as a judge of their credibility but chose not to assist them because he doubted their veracity.

I disagree with the suggestion that withdrawal is a viable solution. I have yet to meet the trial judge who would entertain, much less grant, a motion to withdraw made during trial on the grounds that irreconcilable differences had developed between counsel and client. The same may be said for such motions filed shortly before trial. Further, withdrawal only leaves the problem, unsolved, in the lap of the next lawyer; it also educates the defendant in methods which may be useful in befuddling the entire system.

We come, then, to the question of the decision to forego final argument. In most cases, I would agree that final argument is so important that waiver is below the minimal standard. I also agree with the majority that this case could have been argued and perhaps should have been argued. Nevertheless, the decision not to argue here was within the realm of tactics and strategy. We have indicated that such decisions will not constitute ineffective assistance. *State v. Rodriguez, supra.* In *Rodriguez*, however, counsel had discussed the waiver of argument with the client while in the instant case he did not. Nevertheless, the strategic or tactical decision here was forced upon counsel by the client's insistence on his constitutional right to present the witnesses despite the lawyer's warning that it would weaken the defense. In my view, the client got what he wanted and is not now in a position to complain of the consequent tactical—and ethical—decision to waive argument. The lawyer did not waive argument to "punish" the client, but because it was his judgment that it would harm the case to argue the "mere pres-

ence" defense without mentioning the suspect testimony, which was the only direct evidence on the question. This was a matter of strategy and tactics, a judgment call forced by the client's refusal to take his lawyer's advice, and should not be second-guessed. The lawyer did not handle this problem as well as, with the benefit of hindsight, five justices of the Supreme Court now perceive that it should have been handled. The lawyer, however, did see the problem, was honest with the court and attempted to reconcile the competing interests while giving the client what he demanded. Without the luxury of briefing by counsel, oral argument and time to mount a legal search, the lawyer chose a course of action less than ideal. However, the *Watson* standard requires only minimal competency, not perfection.

I would affirm the conviction.