762 P.2d 506

**STATE of Arizona, Appellee,**

v.

**John Arthur SMITH, Appellant.**

No. 6538.

Supreme Court of Arizona,
En Banc.

Dec. 2, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

George M. Sterling, Jr., Phoenix, for appellant.

HAYS, Justice.

After a jury trial, defendant John Arthur Smith and his codefendant, Julie Lynn Cunningham, were convicted of one count of armed robbery, A.R.S. § 13–1904.[1] Defendant Cunningham's conviction and sentence were affirmed by a memorandum decision of the court of appeals. *See State v. Cunningham* (Smith) [No. 1 CA–CR 9006, filed Feb. 6, 1986].

Because Smith committed this crime while on probation, the trial court sentenced him to life imprisonment without possibility of parole for twenty-five years, A.R.S. § 13–604.01.[2] Defendant appealed his conviction to this court. We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4035.

On September 17, 1984, the Revco drugstore in the Ahwatukee Plaza Shopping Center was robbed. Employees and customers who were inside the store told police that just before 9:00 p.m., a man and woman entered the store wearing nylon stockings over their faces. The couple was armed and ordered everyone to lie face down on the floor. The male robber then ordered the store pharmacist to fill a bag with drugs, including dangerous narcotics. He also took $1,800 in cash receipts from the store office before he and his accomplice fled from the store. Although store employees were able to give a general physical description of the male, no one was able to identify defendant as the robber.

In addition to the statements given by people inside the store, police obtained the statements of witnesses who were in the shopping center parking lot at the time of the robbery. While these statements differed on specific details, they were similar as to the general sequence of events. Witnesses told police that they observed a man

1. While defendants' cases were consolidated below for trial, they have not been consolidated on appeal. Because of the imposition of a life sentence, defendant Smith's appeal is before this court.

2. Renumbered 13.604.02 by Laws 1985, ch. 364, § 5, eff. May 16, 1985.

and a woman sitting in a light colored car in the parking area near the Revco. The couple got out of the car, put stockings over their faces and entered the drugstore. The witnesses next saw the woman leave the drugstore, run towards the parked car, and drive away. A few minutes later, the man followed her out of the store but disappeared on foot behind a nearby Circle K. The woman in the car attempted to catch up with him but eventually "peeled off" in the opposite direction.

One witness was able to obtain the license plate number of the automobile which the woman was driving. With this information, police obtained the name and address of Julie Lynn Cunningham. Defendant and Cunningham were living together at this address and both had access to the car. Police placed the house under surveillance and on October 2, 1984 executed a search warrant. Shortly thereafter, defendant was arrested and charged with armed robbery.

At trial, the critical issue before the jury was identification. Although several witnesses from the parking lot testified to the robbers' general description, only three were able to make in-court identifications. The first witness, Larry Hilyard, positively identified Cunningham as the woman he had seen that night. Hilyard also pointed to defendant but was only "70 percent" sure of his identification. A second witness, Bernadina Rodriguez, similarly identified defendant as the robber. Rodriguez told the jury she was "about 50%" sure that defendant was the same man she had seen in the parking lot. Finally, Jud Reung, a twelve-year-old witness, positively identified Cunningham, but testified that defendant looked different from the man he had seen both before and after the robbery.

Other testimony at trial concerned the existence of physical evidence. Corporal Maggard of the Maricopa County Sheriff's Office testified that fingerprint and shoeprint evidence had been taken from inside the store and from an area behind the Circle K where the robber disappeared. An evidence technician with the Maricopa County Sheriff's Office testified that while she had compared these prints to those of defendant, she could not make a positive match. No other evidence was introduced at trial connecting defendant to the robbery.

On March 6, 1985, defendant Smith and his codefendant were found guilty of armed robbery. Defendant was sentenced to life imprisonment under A.R.S. § 13–604.01. From this conviction, defendant raises several evidentiary issues. However, as we are concerned with another matter which appears in the record, we need not reach defendant's issues.

Throughout trial, defendant was represented by counsel James Kemper. Although Kemper filed motions on defendant's behalf and cross-examined the state's several witnesses, he neither made an opening statement nor did he present any defense witnesses. Kemper did, however, make a brief closing argument.

Following his conviction and sentence, defendant proceeded *in propria persona* until the time of this appeal. While acting in this capacity, defendant filed a motion to vacate judgment under Rule 24.2, Ariz.R. Crim.P., 17A A.R.S. The basis for defendant's motion was the existence of newly discovered evidence. *See* Rule 24.2(a)(2).

In his motion, defendant states that he provided his counsel with the name and telephone number of a possible defense witness, Nancy Garden. Despite these efforts, defendant claims that Kemper never even attempted to contact Garden for an interview or to learn what information she might have. Garden was contacted, however, by defendant's in-laws shortly after defendant's conviction. At that time, Garden stated that she had seen defendant on the afternoon of September 14, 1984 and that defendant was having "a hard time moving around at all." Garden recalled defendant telling her that he had fallen off of a roof he had been working on a couple of days earlier. Garden stated that she again saw defendant on the evening of September 17, 1984 and that he "was still having a lot of trouble with his back and was in quite a bit of pain."

Following their conversation with Garden, defendant's in-laws obtained the names of the doctors who had treated defendant. Defendant's father-in-law contacted Dr. Gerald C. Moczynski, an orthopedic surgeon, and requested copies of defendant's medical records. According to these records, defendant was seen by Dr. Moczynski on September 17, 1984, the same day the robbery occurred. At that time, defendant complained of severe pain in the back and pain going down in his right buttock and right leg. As to the cause of pain, defendant told Dr. Moczynski that on September 12, 1984, while working as a roofer, he had fallen off a roof onto his back and buttocks area. Defendant added that although he had been taken to an emergency room and discharged, he was continuing to suffer lower back pain.

In a letter to the State Compensation Fund, Dr. Moczynski made the following observations:

> On PHYSICAL EXAMINATION, the patient walks with a marked list to the right. He can't heel and toe walk because of pain and can't attain a full squat position....
>
> \*    \*    \*    \*    \*    \*
>
> COMMENTS: At this time I feel the patient has a low back strain. I have placed him on a continued course of bedrest, prescriptions ... and have started the patient on a course of physical therapy. The patient has been advised to return to the office in 1 week's time.

Defendant's father-in-law also was able to obtain the records of Pablo Ruiz, the physical therapist who treated defendant. These records indicate that Ruiz saw defendant on September 24, 1984 and September 25, 1984. Ruiz' evaluation of defendant's condition was similar to that made by Dr. Moczynski.

Defendant asserts that as soon as he became aware of this evidence, he filed the motion to vacate judgment, together with Garden's affidavit, the records of Dr. Moczynski and Pablo Ruiz, and the Employer's Report of Industrial Injury. Although defendant's motion was filed on May 23, 1985, the trial court did not rule on it until October 1, 1985, over four months later. At that time, the trial judge summarily denied the motion.

Although defendant's pleading is framed as a motion to vacate judgment on the basis of newly discovered evidence, we believe these facts instead present a serious question as to whether defendant's constitutional right to effective assistance of counsel has been violated. Defendant claims that at the time he talked with his attorney, he could recall only that he was suffering from a back injury at the time of his arrest. He could not remember, however, the exact sequence of events surrounding the date of his accident, the dates of his treatment, the date of the crime for which he was arrested, and the date of his actual arrest. Defendant urges, however, that he was fully aware of the severity of the sentence he would receive if convicted and for that reason he gave attorney Kemper all the information he could. To this end, defendant provided Kemper with Nancy Garden's name.

Defendant argues that his attorney's failure to interview Garden as a potential witness precluded discovery of the evidence concerning his injury. He claims that this evidence was crucial to a fair determination of his guilt or innocence. Defendant was convicted solely on the identifications of two witnesses—one who was 70% sure he recognized defendant and one who was only 50% sure. There was no physical evidence connecting defendant to the crime. Defendant claims that the evidence contained in his motion would contradict the testimony of other witnesses to the robbery that the male robber was "jumping" over racks and counters and that he "ran" from the Revco and disappeared on foot. Defendant maintains that had this evidence been presented to the jury, a different verdict probably would have resulted.

Based on our review of the record, we believe the allegations contained in defendant's motion warrant consideration. Therefore, as the trial court did not hold a hearing prior to denying defendant's motion, we believe the appropriate remedy in this case is to remand for a full evidentiary hearing.

At this hearing, the trial court should make separate and detailed findings to determine whether counsel's representation was deficient under the surrounding circumstances, and if so, whether counsel's deficient performance prejudiced defendant. *State v. Nash*, 143 Ariz. 392, 694 P.2d 222, *cert. denied*, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); *State v. Lee*, 142 Ariz. 210, 689 P.2d 153 (1984); *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

We believe this hearing to be essential to justice. A decision by this court on the merits of either the ineffective assistance of counsel issue or the issues raised by defendant in his brief would be premature.

Remanded for further proceedings consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.