724 P.2d 556

**STATE of Arizona, Appellee,**

v.

**Warren C. COOK, Appellant.**

**No. 6547.**

Supreme Court of Arizona,
En Banc.

June 25, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Diane D. Hienton, Asst. Attys. Gen., Phoenix, for appellee.

Porter & Moon by Robert R. Moon, Kingman, for appellant.

HAYS, Justice.

Appellant, Warren C. Cook, was tried before a jury in November, 1974, for murder, obstructing justice, kidnapping, assault with intent to commit murder, assault with a deadly weapon, and possession of a deadly weapon. The state also alleged prior convictions of aggravated assault and battery. The first trial resulted in a mistrial. In January, 1975, appellant was tried again before a jury solely on the charges of murder and assault with intent to commit murder, both with an allegation of a prior conviction. Appellant was found guilty of involuntary manslaughter, A.R.S. § 13–457 (repealed 1978) and assault with intent to commit murder, A.R.S. § 13–248 (repealed 1978) both with a prior conviction. The trial judge sentenced Cook to concurrent terms of twenty-five years to life on each count. No timely appeal was taken. After a Rule 32 hearing, however, appellant was granted a delayed appeal in April, 1985. This order by the Mohave County Superior Court was based on a finding that the delay in seeking an appeal was not appellant's fault. This court has jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.Rev.Stat.Ann. §§ 13–4031 and –4035. We affirm.

The facts follow. Early on the morning of July 22, 1974, appellant and another man, Harold Juengst, were drinking beer and talking outside of appellant's gas station. The two men began to argue concerning Charles Juengst, Harold's father. Harold testified that appellant referred to Charles Juengst as "that bald-headed son-of-a-bitch" and to Harold as a "hippy." Following this, appellant pulled out a knife. Harold then attempted to call his father on a pay phone and when the coins jammed, appellant used his knife to cut Harold's beard and hair. Appellant and Harold got into appellant's jeep and started to go to Charles Juengst's home. At some point, Harold jumped out and ran to his parents'

home, awakened them and told them that appellant was planning to kill Charles Juengst. Charles Juengst called the Mohave sheriff's department.

Deputy Mike Lewis responded to the call. Lewis and Harold Juengst returned together to appellant's service station to gather evidence of the attack on Harold. After they arrived, Lewis was walking in front of the gas station when appellant appeared carrying a gun. Harold testified that Deputy Lewis said, "Put the gun down, it's not that serious." Appellant responded, "I'm going to kill that bald-headed son-of-a-bitch, and you, and everyone else." Appellant then fired the rifle, fatally injuring Lewis. Harold Juengst, who was standing at a distance behind the deputy, turned and ran. Appellant shot Harold, grazing his side. As Harold continued to run, a third shot was fired. Appellant went to his home, obtained another gun and drove to Charles Juengst's home. There, appellant fired a shot through the door, and a second shot through the window of the home. Appellant then went to his son's home and eventually returned to the gas station where he was arrested.

## ADMISSION OF OTHER BAD ACTS

First, appellant claims that the testimony concerning the subsequent events at the home of Charles Juengst unfairly prejudiced him. We disagree. The general rule is that evidence tending to show that a defendant has committed certain bad acts, other than those for which he is on trial, is inadmissible. *State v. Woods*, 121 Ariz. 187, 190, 589 P.2d 430, 433 (1979). However, Arizona has long recognized an exception to the rule: evidence of circumstances which complete the story of the crime is admissible, even though it may reveal that other criminal offenses have been committed. *State v. Evans*, 110 Ariz. 380, 381, 519 P.2d 182, 183 (1974). "Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the

crime." *State v. Villavicencio*, 95 Ariz. 199, 200, 388 P.2d 245, 246 (1964). On numerous occasions, this court has found no error when evidence of later crimes was admitted to complete the story of the crime. *See State v. Via*, 146 Ariz. 108, 704 P.2d 238 (1985) (testimony of an alleged marijuana purchase admissible as completing the story, where the state argued defendant's true intention was to use victim's stolen credit cards); *State v. Reinhold*, 123 Ariz. 50, 597 P.2d 532 (1979) (theft of victim's money completed the story of crime where victim testified defendant used her money after raping her to buy cigarettes and beer before they returned to her apartment). Explanation of events which occur before and after a crime can be admitted in order that the full story be understood. *State v. Richmond*, 114 Ariz. 186, 194, 560 P.2d 41, 49 (1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977).

█ In the instant case, not only is the substance of the testimony relevant to the state's theory of the case, but it also corroborates Harold Juengst's earlier testimony. Harold testified that appellant said he was going to kill Charles Juengst. Appellant referred to Charles Juengst as a "bald-headed-son-of-a-bitch," both prior to and at the killing of Deputy Lewis. Appellant's actions of going to get another gun, driving to Charles Juengst's home and firing shots into the house, corroborates Harold's testimony that appellant wanted to kill Charles Juengst. This testimony helps the jury to understand what was meant by appellant's statement to Deputy Lewis just before the killing.

Appellant testified that he thought he had shot a burglar, not a police officer. Thus, the events at Charles Juengst's home help to explain the state's theory as to why appellant left the scene of the killing and how he eventually returned and was arrested. The threats against Charles Juengst before the killing of Deputy Lewis and the attempt to carry out those threats immediately after the killing were clearly part of the complete story of the events of that night. The jury was entitled to have the

alleged crime, *i.e.*, the murder of Officer Lewis, fixed in the background of the accompanying events. We find no abuse of the trial court's discretion in allowing this testimony to be admitted.

## EXCESSIVE SENTENCE

Appellant asserts that the sentence imposed is excessive and was improperly enhanced under § 13–1649 (repealed 1978). In 1975, involuntary manslaughter was punishable by imprisonment not to exceed ten years. A.R.S. § 13–457. Assault with intent to commit murder was punishable by imprisonment for not less than five years nor more than life. A.R.S. § 13–248. Each of appellant's sentences was enhanced through application of the Arizona Recidivist Statute, § 13–1649 of the former code. A.R.S. § 13–1649 was applicable to both counts. *State v. Ferrerira*, 128 Ariz. 530, 533, 627 P.2d 681, 684 (1981) (A.R.S. § 13–1649 applied to each of 11 counts to enhance sentences). Section 13–1649 read in part:

A. A person who, having been previously convicted for ... any offense punishable by imprisonment in the state prison, commits any crime after such conviction, shall be punished upon conviction of such subsequent offense as follows:

1. If for an offense punishable for a first conviction by imprisonment for a term exceeding five years, by imprisonment in the state prison for *not less than ten years* (emphasis added).

▮ Another statute, A.R.S. § 13–1644 (renumbered A.R.S. § 13–4002, repealed 1978), authorized the court to impose a sentence up to life imprisonment if the statute called for a term not less than any number of years and no upper limit was expressly declared in the statute. As A.R.S. § 13–1649 provided for a term of not less than ten years and did not provide for a maximum sentence, the trial court was authorized under A.R.S. § 13–1644 to impose a life sentence. The twenty-five years to life sentence given appellant for the count of assault with intent to murder was within the statutory range, even if appellant was a first-time offender. We find no abuse of discretion by the trial court in setting the minimum at twenty-five years rather than five years. The sentence of twenty-five years to life for the count of involuntary manslaughter *with a prior conviction* was also within the statutory range in 1974. Having found that both counts were properly enhanced, we find that appellant's contention that the sentences are illegal and require resentencing or a new trial is without merit.

▮ Appellant claims that the trial court should not have sentenced appellant under the enhancement statute without first having had an adjudication of the fact of a prior felony conviction under *State v. McGriff*, 7 Ariz.App. 498, 441 P.2d 264 (1968); *see also State v. Lopez*, 120 Ariz. 607, 608, 587 P.2d 1184, 1185 (1978). We find that the addendum to the information, the appellant's testimony on the stand, and the trial court's minute entry of judgment is sufficient for an "adjudication" in compliance with *McGriff*. In an addendum to the information, the state alleged that on February 23, 1968, in Mohave County Superior Court, case number 2293, Warren C. Cook was convicted of the crime of aggravated assault and battery, a felony. Attached to the addendum are records from the Superior Court, including fingerprints and appellant's photo, the fact that appellant was represented by counsel, and the judgment and sentence of two to five years in prison.

In addition to the addendum, appellant testified and admitted the prior conviction on the stand. At trial, appellant admitted two counts of aggravated assault or battery, committed in 1968 in Mohave County, and that they were felony offenses. "An admission on cross-examination is surely the strongest evidence available to prove a prior conviction ..." *State v. Seymour*, 101 Ariz. 493, 495, 421 P.2d 517, 519 (1966). An admission on the stand of a prior felony conviction for the same crime alleged, on the same date alleged, and at the same place alleged, is sufficient to establish the prior conviction. *State v. Pacheco*, 121

Ariz. 88, 90, 588 P.2d 830, 832 (1978). Also, when the state was prepared to prove the prior convictions with a witness, appellant's counsel said to the court:

> Mr. Oehler: If he is here ... and the only relevant reason why he would be here ... is if we deny the prior conviction. I am prepared at this time to stipulate to the prior conviction. The defendant will be testifying and will have to admit on the stand that he has been found guilty pursuant to the Arizona Rules of Evidence of the crime, the date and place and nature.

This clearly shows that appellant and his counsel knew of the prior convictions alleged and intended to admit them on the stand. Additionally, this court has held that when a defendant admits a prior felony conviction on cross-examination, and the prior conviction was alleged by addendum and the state was prepared to prove it, this court may take judicial notice of the records of the Superior Court to determine whether the place and date of the prior conviction agree with the place and date in the addendum. *State v. Valenzuela*, 109 Ariz. 109, 506 P.2d 240 (1973). In interpreting the earlier version of rule 17, Rules of Criminal Procedure, 17 A.R.S., and sentence enhancement under A.R.S. § 13–1649, we have held that where "the prior conviction was alleged for the purpose of increasing punishment, rather than as 'an element of the crime charged,' rule 17 had no application to an admission of the prior conviction." *State v. Canaday*, 119 Ariz. 335, 336, 580 P.2d 1189, 1190 (1978), citing *State v. Gholson*, 112 Ariz. 545, 544 P.2d 654 (1976). Thus, we believe the trial court did not err, under the law effective at the time, in determining the prior conviction based on appellant's admission on cross-examination. The trial court needed only to make such a determination and its minute entry of March 7, 1975, is sufficient adjudication of the matter in open court. We therefore find no abuse of discretion and affirm the sentences as within the applicable statutory limits at the time.

## WITNESS FALSE TESTIMONY

In a pro per brief, appellant has raised additional issues on appeal. We will address those now. Appellant argues that one witness lied while testifying, resulting in appellant's conviction by perjured testimony. The credibility of witnesses is an issue to be decided by the jury. *State v. Reinhold*, 123 Ariz. at 59, 597 P.2d at 541, citing *State v. Scott*, 113 Ariz. 423, 425, 555 P.2d 1117, 1119 (1976). As long as there is evidence supporting the judgment, we will not disturb their determination. *Id.* Here, the jury believed the witness as evidenced by their verdict. Further, we find the evidence was sufficient to sustain appellant's convictions. Thus, we need not consider the issue further.

## PRESENTENCE REPORT

█ Appellant claims that the presentence report was filled out by his wife. He does not, however, make any allegation that the information contained therein was incorrect or harmful to his case. At the sentencing hearing, the trial judge stated that "favorable" information from appellant's wife was part of the presentence report and that he based appellant's sentence, in part, on this report. As we find nothing to indicate that appellant was prejudiced by the information, we find no error.

█ Despite this, appellant asserts that he is entitled to resentencing because he never saw the presentence report. First, no evidence was presented which would indicate that he was not afforded an opportunity to read the presentence report. In fact, at the Rule 32 hearing, appellant's attorney testified that his normal procedure is to go over the report with his clients. This raises at least an inference that appellant was shown the report. *State v. Stotts*, 144 Ariz. 72, 79–80, 695 P.2d 1110, 1117–18 (1985). Second, appellant does not allege that any portion of the presentence report was improper or that it prejudiced him in any way. Third, rule 26.6(a) states in part, "The court shall permit the prosecutor and defense counsel, or if he is without counsel, the defendant, to

inspect all presentence ... reports." The record clearly shows that appellant's counsel had a full copy of the presentence report. Appellant was provided a full and fair opportunity to challenge any allegedly improper portions both before and after sentencing. *See State v. Mincey*, 130 Ariz. 389, 412, 636 P.2d 637, 660 (1981), *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1984). We find no error.

### INITIAL APPEARANCE

■ Appellant contends that he was drunk at his initial appearance which was several hours after his arrest. However, appellant's own testimony at trial is contrary to this contention. In referring to the time prior to the argument with Harold Juengst, appellant was asked: "Were you intoxicated at that time?" Appellant answered, "No, sir, I'd say I wasn't intoxicated. I think I drank five and a half beers that night." The testimony further shows that appellant did not consume any additional alcohol that night. Thus, we find nothing in the record to substantiate appellant's contention that he was drunk at the initial appearance several hours after he last had the opportunity to consume alcohol. In addition, appellant makes no allegation that he was so drunk that he was unable to comprehend what occurred at the initial appearance. *See, e.g., State v. Ferguson*, 149 Ariz. 200, 717 P.2d 879 (1986).

■ Appellant contends that he was denied a right to counsel at his initial appearance before a magistrate. In Arizona, an initial appearance is a proceeding at which a person is advised of his right to counsel and steps are taken toward obtaining counsel for subsequent proceedings. Rule 4.2. Hence, no right to an attorney exists at the initial appearance on the day of the arrest. Appellant's right to counsel, therefore, was not violated.

### COMPETENCY OF COUNSEL

■ Finally, appellant asserts that his attorney did not meet the minimum standards of competency of *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982), *overruled,*

*State v. Lee*, 142 Ariz. 210, 689 P.2d 153 (1984). Appellant alleges that his attorney misinformed him concerning the possibility of his receiving the death sentence if granted a new trial on appeal. Initially, we recognize that *State v. Watson* was overruled in part by this court in *State v. Lee, supra.* Thus, we must examine appellant's contention in light of this case. In *State v. Lee*, we stated that in order for a defendant to establish a claim for ineffective assistance of counsel, he must show that "but for the trial counsel's unprofessional conduct, the result of the trial would have been different." *Id.* at 219, 689 P.2d at 162. *See also State v. Nash*, 143 Ariz. 392, 398, 694 P.2d 222, 228, *cert. denied,* — U.S. —, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). Appellant has not made such a showing. Appellant was granted a delayed appeal on the basis of his allegation of attorney misinformation. As we are affirming both the judgment of guilt and the sentences imposed by the trial judge, the requisite prejudice is absent.

We have reviewed the record for fundamental error. A.R.S. § 13–4035; *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). We have found none.

The judgment and the sentences are affirmed.

HOLOHAN, C.J., and CAMERON and FELDMAN, JJ., concur.

*Note:* Justice FRANK X. GORDON, Jr., did not participate in the determination of this matter.