920 P.2d 1

**The STATE of Arizona, Appellee,**

v.

**Brendan A. CAREY, Appellant.**

**No. 2 CA–CR 94–0054.**

Court of Appeals of Arizona,
Division 2, Department A.

Nov. 9, 1995.

Redesignated as Opinion Dec. 27, 1995.

Review Denied July 2, 1996.

Grant Woods, Attorney General by Paul J. McMurdie and R. Wayne Ford, Phoenix, for Appellee.

Isabel G. Garcia, Pima County Legal Defender by Lois Yankowski, Tucson, for Appellant.

## OPINION

FERNANDEZ, Judge.

A jury convicted appellant Brendan A. Carey of six counts of unlawful transportation and disposal of a hazardous waste, in violation of A.R.S. § 49–925(A)(1) and (3), and five related counts of fraudulent schemes and practices. The trial court suspended imposition of sentence, placed appellant on probation for a period of three years, and fined him $10,000.

On appeal, appellant argues that the invalidation of federal hazardous waste regulations invalidates the Arizona regulations which underlie his convictions, that the instructions defining hazardous waste were erroneous, and that the trial court erroneously excluded other acts evidence. We affirm.

## FACTS

Appellant was the owner and operator of Hazchem Environmental Services, which brokered services involving the treatment, storage, and disposal of industrial wastes. In early 1988, the Cadtek Corporation began manufacturing printed circuit boards which it had formerly only designed. Cadtek hired Hazchem to dispose of the accumulated sludge that resulted from that manufacturing process.

Cadtek's production line included electroplating, electroless plating, and chemical etching processes. The wastewater from the plating processes was collected and discharged into a storage tank. Wastewater from the filled storage tank was transferred to a treatment tank. The treated wastewater was then drained through 50–micron filter bags, and the solid waste that was captured, called sludge, was accumulated and stored in 55–gallon drums for disposal.

Concerned that the sludge might be a hazardous waste, a Cadtek employee contacted Hazchem to inquire about its disposal and spoke with appellant, telling him "who [he] represented, basically what [Cadtek] did, design PC boards and [that they were a] small electroplating operation." On at least one occasion prior to June 1988, appellant toured the Cadtek site and was taken into the "wet floor" area where the plating operations were located. Evidence of the electroplating operation was plainly visible by virtue of the wiring into the tanks and the distinctive odor in the "wet floor" area.

In July 1988, prior to disposing of any waste, appellant had a sample of the sludge drawn for chemical analysis. He reported to Cadtek that the analysis showed that the sludge was nonhazardous and that he could dispose of it at the local landfill very economically. Appellant then wrote to the Pima County Solid Waste Division seeking permission to dispose of the sludge in the Tangerine landfill.

At that time, the Tangerine landfill did not have an Environmental Protection Agency (EPA) permit to accept hazardous waste. However, based on the representations in his letter, appellant was granted permission to dispose of the sludge. Similarly, in response to identical letters from Hazchem employees with attached chemical analyses, permission was granted to dispose of Cadtek sludge on two subsequent occasions. Hazchem disposed of eleven 55–gallon drums in September 1988, sixteen drums in February 1989, and thirteen drums in April 1989.

A solid waste is a hazardous waste if it is a listed, i.e., inherently hazardous, waste pursuant to 40 C.F.R. § 261 Subpart D (1995), incorporated by reference at Ariz.Admin.Code R18–8–261(A).[1] *See State ex rel. Corbin v. Ybarra*, 161 Ariz. 188, 193 n. 3, 777

---

1. The historical note preceding A.R.S. § 49–921 states the legislative finding that subtitle C of the Resource Conservation and Recovery Act established a federal program to provide comprehensive management of hazardous waste and declaring the Arizona legislature's intent "to seek and obtain authorization to administer an equivalent state hazardous waste program in lieu of the federal program." The findings expressly state that "it is the intent of the legislature that the director of the department of health services [DHS] shall have those powers necessary to adopt rules and regulations that are equivalent to[,] and consistent with, the federal hazardous waste regulations . . . ."

P.2d 686, 691 n. 3 (1989). As of May 1980, the EPA had listed "[w]astewater treatment sludges from electroplating operations" as hazardous waste F006 under 40 C.F.R. § 261.31. In his tape-recorded statement, appellant admitted knowing that electroplating processes produced F-coded or listed waste and that he would recognize an electroplating operation if he saw it and was aware of the distinctive odor generated by that process.

## VALIDITY OF ARIZONA'S HAZARDOUS WASTE MIXTURE RULE

Appellant contends that the holdings in *Shell Oil Co. v. Environmental Protection Agency,* 950 F.2d 741 (D.C.Cir.1991) and *United States v. Bethlehem Steel Corp.,* 38 F.3d 862 (7th Cir.1994) establish that the sludge generated from Cadtek's wastewater treatment is not hazardous. He reasons that, because those cases invalidated the mixture rule in effect at that time, 40 C.F.R. § 261.3(a)(2)(ii),[2] and because the Cadtek sludge originated from a mixture of wastewater from listed and nonlisted processes, it was not hazardous waste. Therefore, he argues, the state failed to prove one of the elements of the offenses of which he was convicted.

While we agree that both *Shell Oil Co.* and *Bethlehem Steel Corp.* invalidated the mixture rule, they are distinguishable for two reasons. First, both cases were prosecutions under the federal statute. Second and more importantly, the courts invalidated the rule because of a procedural defect, not a substantive one. The courts in both cases found that the EPA had failed to provide adequate notice and opportunity for comment when it issued the final . waste management rules, which included the mixture rule provision. That provision had not been included in the proposed rules and because the mixture rule could not be regarded as a logical outgrowth of the proposed rules, the court in *Shell Oil Co.* found unpersuasive the government's argument that interested parties had received

"implicit notice" of the mixture rule from the publication of the proposed regulations. *Id.,* 950 F.2d at 751–52.

■ Appellant argues that because Arizona adopted the federal rules, incorporating them by reference, *see* Ariz.Admin.Code R18–8–261(A), the invalidation of the federal rule likewise invalidated Arizona's mixture rule. However, unlike the final EPA rules, the Arizona rules were submitted by DHS to the public for comment through publication on October 1, 1986, and public hearings were conducted in Yuma, Tucson, Phoenix, and Flagstaff. The mixture rule was part of those proposed regulations. Arizona Secretary of State Public Rule–Making Docket, Docket # R 86–0001, filed September 16, 1986.

A review of the adoption documents for the Arizona hazardous waste regulations reflects that the legislature chose to customize the federal regulations to our needs. R9–8–1860–1880. Because the legislature elected to promulgate rules equivalent to, and consistent with, the federal rules, but in lieu of them and because it followed Arizona's rule-making requirements, A.R.S. §§ 41–1001 through 41–1057, we find *no procedural defect* in adopting them in Arizona's mixture rule. Accordingly, the invalidation of the federal rule has no effect on the validity of the rule under which appellant was prosecuted.

Appellant also contends that the sludge Cadtek generated and Hazchem disposed of was a mixture of accumulated wastewaters from manufacturing processes which generated hazardous, as well as nonhazardous materials. He claims that the accumulated mixture was not pure electroplating sludge and that there was insufficient evidence that the mixture constituted F006 wastewater sludge as that term is defined by cases interpreting 40 C.F.R. § 261.3(a)(2)(ii).

■ On appeal, we view the evidence in the light most favorable to sustaining the verdict, *State v. Guerra,* 161 Ariz. 289, 778 P.2d 1185 (1989). The evidence showed that

---

**2.** Although modified by subsequent amendment, in pertinent part, the federal mixture rule is now codified at 40 C.F.R. § 261.3(a)(2)(iv).

the accumulated sludge resulted from wastewater treatment generated during Cadtek's electroless and electroplating manufacturing processes. The state's expert testified that the final sludge generated by the wastewater treatment process constituted an F006 listed waste. The defense expert agreed with that conclusion; he testified, however, that it was not a sufficient quantity to qualify for regulation under the rule. We do not reweigh the evidence to decide if we would reach the same conclusions as the trier of fact. *Id.* Our review of the record reveals substantial evidence from which a jury could find that the waste appellant transported and disposed of was hazardous. Accordingly, we find no error.

## JURY INSTRUCTIONS

■ Appellant next argues that the trial court erroneously instructed the jury on the definition of hazardous waste. He concedes that he did not object to the challenged instructions, but asserts that fundamental error occurred because the court failed to properly instruct the jury on an element of the offense which the state was required to prove. The jury was instructed as follows:

Under Arizona law listed hazardous waste includes those waste materials listed by the Arizona Department of Environmental Quality as F006 waste.

F006 waste is wastewater treatment sludge from manufacturing processes that include certain stated electroplating or certain stated chemical etchings.

The instructions defining hazardous waste were debated at length during the settling of instructions, and appellant agreed to the instructions that were given.

The state's expert testified that listed wastes, in general, are constituted in such a way that they are regarded as inherently hazardous to humans or the environment. She stated that the sludge generated from certain electroplating operations, designated as F006 waste, qualifies as a listed waste and concluded that the wastewater treatment sludges generated from Cadtek's manufacturing operations were F006 waste.

The state introduced into evidence an exhibit that was identified as an EPA interpretive ruling which had been published in the Federal Register in December 1986 and which clarified the scope of F006 as listed in the Code of Federal Regulations. That exhibit included a listing of those certain electroplating and chemical etching processes that would fall within the scope of the F006 listing. We conclude that the instructions given correctly stated the law and were supported by the evidence. Therefore, we find that they did not constitute fundamental error. *State v. West*, 176 Ariz. 432, 862 P.2d 192 (1993), *cert. denied, West v. Arizona*, —— U.S. ——, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994); *State v. Witwer*, 175 Ariz. 305, 856 P.2d 1183 (App.1993).

■ Appellant also asserts that the court failed to instruct the jury on the issue of conditionally exempt, small quantity generators pursuant to 40 C.F.R. §§ 261.5(a) and 261.5(g)(3)(iv), as incorporated into and amended in Ariz.Admin.Code R9-8-1861. Because appellant failed to request that such an instruction be given, the court did not err.

## OTHER ACTS EVIDENCE

■ Appellant argues that the trial court erroneously excluded evidence that Cadtek's owners had intentionally violated hazardous waste disposal laws, resulting in the violation of his constitutional right to present a defense, including his right to confront and cross-examine the witnesses against him. The decision to admit or preclude evidence lies within the sound discretion of the trial court. *State v. King*, 180 Ariz. 268, 883 P.2d 1024 (1994), *cert. denied, King v. Arizona*, —— U.S. ——, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995). We will not disturb a trial court's ruling on the admissibility of evidence absent an abuse of that discretion. *State v. Fodor*, 179 Ariz. 442, 880 P.2d 662 (App.1994).

■ Pursuant to Rule 404(b), Ariz.R.Evid., 17A A.R.S., appellant had sought to admit evidence of Cadtek's other acts to show a continuing pattern of deception in dealing with appellant and others regarding the disposal of waste generated from its manufac-

turing operations. Although the trial court admitted evidence of Cadtek's actions related to the time period of the charged offenses, it admonished the parties that cumulative evidence would not be admitted and precluded appellant's request to cross-examine witnesses about Cadtek's subsequent efforts to avoid the rules of hazardous waste disposal, finding the evidence to be irrelevant pursuant to Rules 402 and 403, Ariz.R.Evid. Appellant's defense was that Cadtek's owners had not informed him that their manufacturing processes included electroplating and that, without that information, he did not know that the waste he had agreed to transport and dispose of might have been a listed F006 hazardous waste. He argued that evidence of Cadtek's owners' subsequent intentional disposal of untreated wastewater into the sewer system to avoid the expense of hazardous waste disposal was probative of Cadtek's motive or plan to deceive him and to complete the story of that deception.

While it is true that Rule 404(b) evidence may be relevant and admissible for purposes such as appellant has asserted, *State v. Castaneda*, 150 Ariz. 382, 724 P.2d 1 (1986); *State v. Cook*, 150 Ariz. 470, 724 P.2d 556 (1986), by the plain language of that rule, other acts evidence is not admissible if offered solely to prove that a person acted in conformity with a character trait. It is apparently not disputed that these acts occurred, that Cadtek's owners committed them, and that the circumstances were as appellant claimed. However, our review of the record shows that the only purpose for which the other acts evidence could have been offered was to show that if there were subsequent acts of deception, Cadtek's owners' prior actions must have been "in conformity therewith." Ariz.R.Evid. 404(b). The alleged failure to tell appellant that Cadtek was generating wastewater sludge from electroplating is far different than dumping untreated wastewater into the sewer system and could not have been relevant to show a common plan. Moreover, Cadtek's subsequent misconduct does not complete the story of what are totally separate and unrelated actions, both by virtue of the time frame and the nature of the acts themselves. We find no abuse of discretion in the court's ruling.

We have reviewed the entire record for fundamental error and have found none. Therefore, appellant's convictions are affirmed.

LIVERMORE, P.J., and PELANDER, J., concur.