NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAVIER V. ALARCON, *Appellant.*

No. 1 CA-CR 18-0165
FILED 1-14-2020

Appeal from the Superior Court in Maricopa County
No. CR2013-436212-002
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee*

The Ferragut Law Firm PC, Phoenix
By Ulises A. Ferragut, Jr.
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**C A T T A N I**, Judge:

¶1        Javier V. Alarcon appeals his convictions and sentences for first degree murder, two counts of kidnapping, two counts of armed robbery, burglary in the first degree, and aggravated assault.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        In April 2013, Alarcon and two other men ("co-defendants") participated in an armed home invasion that resulted in the murder of one of the victims.  At approximately 12:25 a.m., Alarcon and the co-defendants broke through a patio door at the victims' home.  Yelling "A.T.F." as they entered, Alarcon and the co-defendants held N.B. and R.D. at gunpoint, raided the home, and eventually shot N.B. multiple times, killing him.  Alarcon and the co-defendants fled before police officers responding to a 911 call could apprehend them, but law enforcement later identified them through DNA, fingerprints, and cell phone records.  Alarcon's DNA was found on zip ties, a glove, and a mask that were used in the attack and recovered from the property.

¶3        In August 2013, a Maricopa County grand jury issued an indictment charging Alarcon with the offenses listed above, and after a 12-day trial, a jury convicted Alarcon of those offenses.[1]  The superior court sentenced Alarcon to a combination of consecutive and concurrent terms of imprisonment for the seven convictions, resulting in an aggregate term of 10.5 years, followed by a life sentence (with the possibility of release after 25 calendar years), followed by an additional 10.5 years.  Alarcon timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A).

---

[1]        The indictment also charged Alarcon with additional counts of kidnapping, armed robbery, and aggravated assault involving a different victim, but the superior court granted defense motions for judgments of acquittal as to those charges.

## DISCUSSION

### I.    Pre-Arraignment Delay.

¶4          Alarcon argues that failure to appoint counsel during a months-long delay between his initial appearance in Pinal County and his arraignment in Maricopa County resulted in structural error requiring reversal of his convictions, and that double jeopardy precludes retrial.  We disagree.  Although the delay was improper, it did not result in reversible error.

¶5          Alarcon was indicted in this case and a warrant issued for his arrest on August 9, 2013.  At that time, Alarcon was, as the State was aware, in jail in Pinal County on unrelated charges.[2]  The arrest warrant was served to Alarcon that same day in the Pinal County jail.  The Pinal County Superior Court apparently conducted an initial appearance proceeding with regard to the Maricopa County charges on August 14, 2013, during which it set release conditions and scheduled an arraignment in the Maricopa County Superior Court for August 19, 2013.  For reasons that are not clear from the record, that arraignment was not held.

¶6          Over the months that followed, the State (through the Maricopa County Attorney's Office) petitioned to secure Alarcon's attendance for initial appearance proceedings in Maricopa County in October 2013 and again in February 2014.  Although the Maricopa County Superior Court granted these petitions, the initial appearance proceedings did not take place on those dates.  Also in October 2013, Alarcon filed in Maricopa County Superior Court a motion to quash warrants regarding the Maricopa County charges, requesting to be transported or, in the alternative, that any pending warrants "be lifted & said court reset a court date after [Alarcon is] release[d] so that [Alarcon] may appear in said court for any & all final dispositions."

¶7          Alarcon was not transported from the Pinal County jail to the Maricopa County jail until March 13, 2014.  On that date, he appeared for an initial appearance hearing in Maricopa County Superior Court, at which the court appointed him counsel and set an arraignment for March 20, 2014.  The court held his arraignment on March 17, 2014, at which Alarcon was represented by counsel.  The court entered a not guilty plea on Alarcon's

---

[2]      Alarcon was eventually convicted of kidnapping and escape in that matter, Pinal County Superior Court Case Number CR2013-00715, and was sentenced to six years' imprisonment in May 2014.

behalf, designated the matter complex, affirmed the appointment of counsel, and set the next court hearing. Alarcon did not, however, object or otherwise raise the issue of the delay.

**¶8**      He nevertheless claims on appeal that the delay of more than seven months before his arraignment, without appointed counsel, resulted in structural error.

### A.      Asserted Structural Error.

**¶9**      Structural errors are "defect[s] affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991), that "deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Neder v. United States*, 527 U.S. 1, 8–9 (1999) (citation omitted). Structural error, which has been recognized in relatively few contexts, is prejudicial per se, and reversal is mandatory. *Washington v. Recuenco*, 548 U.S. 212, 218–19 & n.2 (2006); *State v. Ring*, 204 Ariz. 534, 552–53, ¶¶ 45–46 (2003); *see also United States v. Cronic*, 466 U.S. 648, 659 (1984).

**¶10**      The Sixth Amendment guarantees the right to representation by counsel for criminal defendants. U.S. Const. amend. VI; *see also* Ariz. Const. art. 2, § 24; Ariz. R. Crim. P. 6.1. This right to counsel applies to all critical stages of the criminal trial process. *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004); *see also State v. Gunches*, 240 Ariz. 198, 202, ¶ 10 (2016). Deprivation of this right rises to the level of structural error when a defendant suffers the "complete denial of counsel . . . at a critical stage of his trial." *Cronic*, 466 U.S. at 659; *see also Gideon v. Wainwright*, 372 U.S. 335, 343–45 (1963) (characterizing complete denial of counsel as structural error); *State v. Torres*, 208 Ariz. 340, 344, ¶ 11 (2004).

**¶11**      For these purposes, a critical stage is one at which "substantial rights of the accused may be affected." *State v. Conner*, 163 Ariz. 97, 104 (1990) (citations omitted); *see also United States v. Bohn*, 890 F.2d 1079, 1080–81 (9th Cir. 1989). Generally, the most critical period in a criminal trial runs from arraignment through trial. *United States v. Wade*, 388 U.S. 218, 225 (1967). An initial appearance does not itself trigger the Sixth Amendment right to counsel. *State v. Cook*, 150 Ariz. 470, 475 (1986). Instead, it "is a proceeding at which a person is advised of his right to counsel and steps are taken toward obtaining counsel for subsequent proceedings." *Id.* at 475.

**¶12**      Alarcon has not established a deprivation of counsel amounting to structural error. First, the period of the pre-arraignment

delay was not a critical stage of the trial process. Alarcon was not entitled to counsel at the initial appearance in Pinal County. *See id.* No other hearings or case events occurred until Alarcon was transported to Maricopa County on March 13, 2014, at which point counsel was immediately appointed, four days before Alarcon's arraignment. Because no hearings were held during the pre-arraignment delay, Alarcon was not subjected to a confrontation with the State and did not face any "proceeding test[ing] the merits" of his case. *See Menefield v. Borg*, 881 F.2d 696, 698–99 (9th Cir. 1989). Nor does the record show that Alarcon requested counsel or that the court denied such a request, or that Alarcon lost any significant rights over that period. *See Bell v. Cone*, 535 U.S. 685, 696 (2002) (describing critical stages as those that, like arraignment, "h[o]ld significant consequences for the accused"). Conversely, the record reflects a lengthy and robust pretrial and trial process following arraignment (at which Alarcon was represented, and at which no issue regarding delay was raised) including dozens of court hearings, full representation by counsel, numerous litigated issues (none of which involved pre-arraignment delay), and a fair trial.

**¶13** Because Alarcon was not denied counsel at a critical stage, he has not established structural error.

## B. Fundamental Error Review.

**¶14** Because Alarcon has not shown structural error and because he made no timely objection in the superior court, we review for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018); *see also Cronic*, 466 U.S. at 658–59. To prevail on a claim of fundamental error, a defendant must first demonstrate that error exists. *Escalante*, 245 Ariz. at 142, ¶ 21. If error exists, we must determine based upon the totality of the circumstances whether the error is fundamental and prejudicial. *Id.* To establish fundamental error, a defendant must show that the error: (1) went to the foundation of the case, (2) took from the defendant a right essential to his defense, or (3) was so egregious that he could not possibly have received a fair trial. *Id.* "If the defendant establishes fundamental error under prongs one or two, he must make a separate showing of prejudice . . . ." *Id.* "The defendant bears the burden of persuasion at each step." *Id.*

**¶15** Alarcon has not established error, much less fundamental error, related to appointment of counsel. From arraignment on, Alarcon was represented by counsel at all points throughout a complex four-year trial process, and approximately 23 months after the arraignment, the superior court granted Alarcon's request to change counsel. Alarcon has

not established that the initial delay, although unfortunate, adversely affected his right to counsel.

¶16 To the extent Alarcon now asserts a speedy trial issue, Alarcon did not raise a Rule 8 or constitutional speedy trial issue (whether resulting from the pre-arraignment delay or otherwise) in the superior court, and he offers no explanation for why he could not do so following appointment of counsel. Moreover, the case was designated complex at his arraignment, which increased the time period for trial from 150 to 270 days after arraignment. Ariz. R. Crim. P. 8.2(a)(1), (3). Alarcon filed numerous motions to continue trial that the superior court granted with exclusion of time under Rule 8.4. These actions were unrelated to the pre-arraignment delay. Alarcon's trial was conducted within Rule 8 time limits, and he has not shown any constitutional speedy trial violation. Moreover, Alarcon has not established that the pre-arraignment delay restricted him post-arraignment from asserting his speedy trial rights.

¶17 To the extent Alarcon asserts that the pre-arraignment delay somehow hampered discovery, the record reflects that the State complied with all of its obligations under Rule 15.1 of the Arizona Rules of Criminal Procedure following Alarcon's arraignment. On appeal, Alarcon does not specify any discovery violation, much less one that resulted from pre-arraignment delay, and no discovery violations were asserted in the superior court. Alarcon has not established prejudice resulting from the delay that occurred throughout the trial preparation process.

¶18 Alarcon further urges that the pre-arraignment delay hindered his ability to obtain what he asserts was exculpatory evidence: security video recordings from a convenience store and the identity of the store's clerk. Alarcon testified at trial that he was at a nearby convenience store to purchase drugs when the home invasion happened, and he asserts that the store's security video or the clerk would have confirmed his presence.

¶19 Although Alarcon attributes his inability to secure the video to the pre-arraignment delay, Alarcon's investigator testified that the video would only have been available for a period of 60 days after recording. The crimes took place on April 12, 2013, and the indictment was not returned until August 9, 2013, long after that 60-day period expired. Accordingly, the delay had no causal connection to Alarcon's asserted inability to acquire the video evidence. Moreover, the delay did not impede Alarcon from presenting his alibi defense through other evidentiary means.

¶20          The delay likewise did not impair Alarcon's ability to identify and locate the convenience store clerk.  In the significant pretrial process, Alarcon had adequate opportunity to obtain the clerk's information from the store and to attempt to find the clerk.  But Alarcon's investigator provided no testimony that he investigated, or was asked to investigate, the clerk's identity and location.  The record does not substantiate Alarcon's alleged inability to identify, locate, or secure the attendance of the witness because of the pre-arraignment delay.  Thus, Alarcon has not demonstrated any prejudice or otherwise established fundamental error requiring reversal.

## II.      Motion to Suppress.

¶21          Alarcon next argues that the superior court committed reversible error by denying his motion to suppress the State's DNA evidence.  Specifically, Alarcon contends that the State conducted an illegal search and seizure by collecting Alarcon's DNA from food and a handwipe when he was incarcerated in the Pinal County jail.  The superior court denied suppression on the basis that Alarcon did not have a reasonable expectation of privacy in the disposed items.

¶22          The Fourth Amendment protects individuals against unreasonable searches and seizures.  U.S. Const. amend. IV.  Evidence obtained by a search or seizure that violates Fourth Amendment protections is generally inadmissible in a criminal trial.  *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961); *State v. Valenzuela*, 239 Ariz. 299, 302, ¶ 10 (2016).  We review the denial of a motion to suppress evidence for an abuse of discretion.  *State v. Mitchell*, 234 Ariz. 410, 413, ¶ 11 (App. 2014).  We review de novo, however, the superior court's legal determination whether a search "complied with the dictates of the Fourth Amendment."  *State v. Valle*, 196 Ariz. 324, 326, ¶ 6 (App. 2000).  In doing so, we will uphold the superior court's ruling if it is legally correct for any reason.  *State v. Huez*, 240 Ariz. 406, 412, ¶ 19 (App. 2016).

¶23          After gaining information from a co-defendant that Alarcon participated in the home invasion, investigating officers located Alarcon in the Pinal County jail and contacted detention officers there.  The detention officers agreed to assist the investigators in gathering Alarcon's DNA.

¶24          On August 5, 2013, detention officers transported Alarcon from his jail cell to a booking area for fingerprinting related to an active misdemeanor warrant.  The officers provided Alarcon with a lunch consisting of a sandwich and a juice container, and Alarcon discarded the

remainder of these items into a trash can. Alarcon then used a handwipe during the fingerprinting process that he discarded into the garbage. The detention officers retrieved all of the discarded items from the trash can. Alarcon's DNA was recovered from the items and revealed a match with DNA from the zip ties, mask, and glove found at the homicide scene. Mesa police officers thereafter obtained a search warrant to take buccal swabs from Alarcon, and this DNA profile also matched the homicide scene items.

¶25 The superior court did not err by denying Alarcon's motion to suppress. When detention officers retrieved the items from which DNA was recovered, Alarcon was in custody and had at most a de minimis expectation of privacy. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984) ("The Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."); *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (noting that this limitation applies to pretrial detainees as well as convicted prisoners); *State v. Bishop*, 137 Ariz. 361, 363 (App. 1983); *see also State v. Apelt*, 176 Ariz. 349, 364 (1993) (holding defendant has no expectation of privacy in non-legal letters and notes seized from jail cell). Alarcon did not have a reasonable expectation of privacy in lunch items or a handwipe provided and owned by the jail while he was in custody, meaning the seizure of materials containing his DNA on August 5, 2013 was not improper.

¶26 Moreover, Alarcon abandoned the items when he disposed of them in the garbage, and as a result, he abandoned any privacy interest he may have had. *See Abel v. United States*, 362 U.S. 217, 241 (1960). The detention officers retrieved the items from a garbage can, where no reasonable expectation of privacy exists. *See California v. Greenwood*, 486 U.S. 35, 37 (1988). No warrantless search or seizure implicating the Fourth Amendment thus occurred, and the superior court did not err by denying Alarcon's motion to suppress this evidence.

**CONCLUSION**

¶27 For the foregoing reasons, we affirm Alarcon's convictions and sentences.

